[No. 4147.   Decided December 29, 1902.]

J. L. DRUMHELLER et al., Respondents, v. AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

APPEAL — BRIEFS — STATEMENT OF CASE.

Where appellant states in his brief the essential facts of the case, although not at the beginning, and makes reference to the place in the record where they can be found, it is a sufficient compliance with rule 8 of the supreme court, which provides that "briefs shall contain a clear statement of the case, so far as deemed material by the party, with reference to the pages of the transcript for verification."

BUILDING CONTRACT — ALTERATIONS — LIABILITY OF SURETIES.

Where a building contract contemplates the possibility of changes in the plans and specifications, a surety upon the bond of the contractor must be regarded as having consented in advance to alterations in the contract and cannot escape liability on the ground of alterations having been made without the express consent of the surety.

SAME — MAKING OWNER A SUB-CONTRACTOR — EFFECT.

A surety on a building contract cannot complain that the contractor permitted the obligees to construct a portion of the work and deduct the value thereof from the contract price, when the contract itself contemplated that a portion of the work might be performed by sub-contractors, and the obligees merely occupied that relation toward the contractors.

SAME.

A provision in a building contract that there shall be no alterations made except upon the written order of the architect re-

lates solely to changes in the work shown on the drawings and specifications and not to changes in the employment of the men engaged in performing the work.

SAME — LIQUIDATED DAMAGES — SUBMISSION OF CLAIM TO ARCHITECT.

The provision of a building contract requiring disputes as to claims for damages to be submitted to the architect, or to arbitrators, has no application to another provision providing liquidated damages for failure to complete the building within a stipulated time.

INSTRUCTIONS — COMMENT ON EVIDENCE.

When references to the evidence, made by the court in its charge to the jury, do not amount to an explanation or criticism of the evidence, nor assume that a particular fact is proven thereby, such references do not violate the constitutional prohibition against judges commenting upon matters of fact.

SAME.

Where there is no evidence as to a particular matter, it is not a comment on the facts for the court to tell the jury that "the testimony is silent as to that point."

Appeal from Superior Court, Spokane County.—Hon. WILLIAM E. RICHARDSON, Judge. Affirmed.

*C. S. Voorhees* and *Reese H. Voorhees,* for appellant.

*Crow & Williams,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—This was an action instituted by the respondents against the defendants Rief and Schiefer, as principals, and the American Surety Company of New York, as surety, on a bond executed by said principals and said surety for the faithful performance of a contract which the said principals had entered into with the respondents for the construction of a certain building in the city of Spokane. The bond in question is in the sum of $4,000, and the respondents (plaintiffs below) by this action seek to recover the damages alleged to have been sustained by them by reason of the failure of the said con-

tractors, Rief and Schiefer, to perform their said contract according to its terms and conditions.   The contract involved herein is in writing, and the execution of the bond and agreement by the respective parties designated therein. is admitted.   It appears that the said Rief and Schiefer (hereinafter called the "contractors") undertook and agreed, under the direction and to the satisfaction of John K. Dow, architect, acting as agent for the owners (respondents) to provide all the materials and perform all the work mentioned in the specifications and shown on the drawings prepared by the said architect for the four story and basement brick and stone building situated at the corner of Front and Howard streets, Spokane, Washington, including everything necessary to complete the building, except the heating and plumbing, for the sum of $14,900, which sum the respondents agreed to pay at the times and upon the conditions set forth in the written agreement. The specifications of the architect called for the construction of an asphalt sidewalk around designated portions of the building, and it seems to have been understood by all parties that such sidewalk was included in the building contract, though not expressly mentioned therein.    This contract was entered into in July, 1899, and article 6 thereof provides that "the contractor shall complete the whole of the work comprehended in this agreement on or before the first day of December, 1899, provided that possession of the premises be given him on or before the 26th day of July, 1899," and that "time is made the essence of this contract, and for every day that said contractor fails after the time herein limited to complete said work herein mentioned he shall pay to the owner, as liquidated damages for such delay, the sum of ten dollars per day until the work is completed."    And in article 3 it is stipulated that:    "Alterations may be made in the work herein pro-

vided for, but no alterations shall be made in the work shown or described by the drawings and specifications, except on a written order of the architect, and, when so made, the value of the work added or omitted shall be computed by the architect, and the amount so ascertained shall be added to or deducted from the contract price.    In the case of dissent from such award by either party hereto, the valuation of the work added or deducted shall be referred to three disinterested arbitrators, one to be appointed by each of the parties to this contract, and the third by the two thus chosen, the decision of any two of whom shall be final and binding; and each of the parties hereto shall pay one-half of the expense of such reference."    The contract also provided that if, at any time, there shall be evidence of any lien or claim for which, if established, the owner of the premises might become liable, and which is chargeable to the contractor or sub-contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or claim; and that, if there be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises, made obligatory in consequence of the contractor's default."    It is further stipulated in the contract (article 7), in effect, that, should the contractor be delayed in the prosecution or completion of his work by any act, neglect, delay, or default of the owner or the architect, or any other contractor employed by the owner, or any damage which might happen by fire, lightning, earthquake, or cyclone, then the time fixed for the completion of the work should be extended for a period equivalent to the time lost by reason of any or all of said causes; but no such allowance should be made unless a claim therefor

should be presented to the architect in writing within twenty-four hours after the occurrence of such delay, and that the duration of such extension should be certified to by the architect; but the right was reserved by the parties to appeal from his decision to arbitration, as provided in article 3 of the contract.

The respondents alleged in their complaint, in substance, among other things:    That they were the owners of certain land in the city of Spokane, which they specifically described.    That on July 27, 1899, they entered into a contract in writing with the defendants Rief and Schiefer, whereby the said defendants agreed to erect and construct a four-story building upon said real estate for the plaintiffs, which contract was attached to and made a part of the complaint.    That on the 29th day of July, 1899, the said defendant, the American Surety Company of New York, for the purpose of guarantying the performance of said contract by the said Rief and Schiefer, executed and delivered to the plaintiffs its bond of indemnity, which bond is set out *in extenso* in the complaint, and contains the following recitals:

"The condition of this obligation is such that whereas, a contract and agreement has been made and entered into between the above bounden principals and J. L. Drumheller and A. A. Barnett, for the construction of a four-story and basement brick and stone building situated on part of lots one (1) and two (2), block two (2), Resurvey and Addition to Spokane, Washington, including everything to complete the building, except the heating and plumbing, a true copy of which said agreement is hereto annexed and made a part hereof; now, therefore, if the said above bounden principals shall and will fully and completely perform all the conditions of said contract hereto annexed faithfully in every respect, and shall pay for all materials furnished and labor performed in the execution of said contract, to the parties entitled thereto, and all

damages, expenses, and charges due to J. L. Drumheller and A. A. Barnett under said contract by reason of the non-performance thereof strictly and literally as in said contract provided, then this obligation to be void; otherwise to be and remain in full force and effect."

That defendants, Rief and Schiefer, duly entered upon the performance of said contract, and completed the building, but failed to complete the same within the time required by said contract, and did not complete it until the first day of March, 1900. "That by the terms of said building contract these plaintiffs were to pay said Rief and Schiefer for the construction of said building, including the laying of an asphalt sidewalk around said building, in accordance with the plans and specifications prepared by J. K. Dow, architect, the total sum of $14,900. That afterwards these plaintiffs determined to construct a cement sidewalk around said building, instead of said asphalt sidewalk, and by agreement then entered into between these plaintiffs and the said A. Rief and Frank Schiefer, with the consent of said American Surety Company of New York, it was agreed that these plaintiffs should construct said cement sidewalk themselves at their own expense, and that said Rief and Schiefer, by reason of being relieved from constructing said asphalt sidewalk, should allow plaintiffs the sum of $375 on said contract price for said building;" that during the progress of the construction of said building the plaintiffs from time to time made payments to said Rief and Schiefer upon estimates made by J. K. Dow, architect, aggregating the sum of $12,464. That when said building was completed the plaintiffs learned that the contractors, Rief and Schiefer, had incurred large bills and liabilities for labor performed upon and materials used in the construction of said building, which plaintiffs

requested the said Rief and Schiefer and the said American Surety Company to fully pay and settle, but all of said defendants have neglected and refused to pay the same. That by reason of the non-payment of said bills the various parties who had furnished said labor and material in the construction of said building were threatening to claim liens thereon. That, for the purpose of protecting said property from said liens, the plaintiffs were obliged to pay, and did pay, large sums of money in discharging said claims for labor and material performed and furnished at the request of said Rief and Schiefer, amounting in all to $2,988.65. That by the terms of their contract the said contractors agreed to complete the said building on or before December 1, 1899, provided that possession of the premises should be given them on or before July 26, 1899, and that possession was so given them before said date. That it was stipulated in said contract that for every day said contractor should fail to complete the said building after the time directed therein they should pay to the plaintiffs the sum of ten dollars per day until said work should be completed; and that without any fault on the part of the plaintiffs, and by reason of the fault and neglect of said Rief and Schiefer, the completion of said building was delayed until March 1, 1900, a period of ninety days, and by reason thereof the plaintiffs were damaged in the sum of $900. The plaintiffs, by reason of the premises, demanded judgment against the defendants for $1,827.65, together with interest thereon from the date of the filing of the complaint. The contractors and the surety company filed separate answers to the complaint, which answers were, however, for the most part substantially alike.

The defendants, in their answers, admit the execution of the contract and bond as alleged in the complaint; ad-

mit that the plaintiffs from time to time during the progress of the work upon the building, made payments to the contractors upon estimates made by the architect amounting to the sum alleged by plaintiffs; admit that the plaintiffs, after the completion of the building, paid certain claims for materials and labor which were chargeable against the contractors, and for which the claimants were entitled to liens upon the building; admit the making of the agreement set forth in paragraph ·7 of the complaint, whereby it was agreed between the plaintiffs and said contractors that the former should, at their own expense, build a cement, instead of an asphalt, sidewalk around said building, and in consideration thereof, and of being released from constructing the same, the contractors were to allow plaintiffs to deduct the sum of $375 from the contract price of the building, but deny that the defendant The American Surety Company consented that the plaintiffs might construct the said sidewalk, or that the sum of $375, or any sum, might be deducted from the contract price of the building on account of the construction thereof by plaintiffs, or that said defendant consented to any change of the original contract concerning said sidewalk, except that said sidewalk might be constructed of cement instead of asphalt, and that the increased cost occasioned by such change, if any, should be paid by plaintiffs; admit that under the provisions of their contract, the defendants Rief and Schiefer agreed to complete the said building on or before December 1, 1899, and that the completion of said building was delayed until March 1, 1900, a period of 90 days, but deny that said delay, or any part thereof, occurred without the fault of plaintiffs, or that by reason thereof plaintiffs were damaged in the sum of $900, or at all. The defendants Rief and Schiefer, in addition to the

denials in their answer, set up certain claims for extra
work, among which was a claim for $231.50 for labor
performed in strengthening the foundation of the wall
of an adjoining building, which was to be used as a party
wall by plaintiffs, and for which labor said defendants
alleged the plaintiffs agreed to pay. The said defendants
also pleaded certain matters by way of excuse for not
completing the building within the time limited in their
contract, and, as a further and partial defense, alleged
that the plaintiffs orally agreed with said Rief and Schie-
fer to extend the time for the completion of said building
until March 1, 1900, at which time it was completed.
The affirmative matter alleged in the answers was denied
in the reply; and, under the issues presented by the plead-
ings, a trial was had resulting in a verdict and judgment
for the plaintiffs against all the defendants. From such
judgment the defendant, American Surety Company,
alone has appealed.

The respondents (plaintiffs below) move to strike the
brief of appellant, and to dismiss the appeal, for the
alleged reason that the appellant has utterly failed to
comply with the requirement of subdivision 1 of rule 8
of this court in that it has failed to make a clear state-
ment of the case, and has also failed to refer to the pages
of the transcript for verification. Subdivision 1 of rule
8, which respondents contend has not been complied with
by appellant, reads as follows:

"Briefs shall be printed throughout in plain, clear type,
and shall contain a clear statement of the case so far as
deemed material by the party, with reference to the pages
of the transcript for verification."

The manifest object of this rule is to apprise this court,
and the opposite party of the real nature and character
of the case presented for determination, as understood by

the party making the statement. While it is the usual
and the better practice to state generally, at least, at the
beginning of the brief, all matters deemed material or
essential, still the rule does not require every material
matter and thing which was considered by the trial court
to be set forth in such preliminary statement. If the
essential facts of the case are clearly stated in the brief,
though not *in limine*, and the place in the record where
they can be found is referred to, it cannot well be said
that the provision of the rules in question has not been
complied with. In the case at bar it is stated in the
first part of appellant's brief, in effect, that this action
was brought by J. L. Drumheller and A. A. Barnett
against A. Rief and Frank Schiefer and the American
Surety Company of New York for breach of a building
contract entered into between the plaintiffs and said Rief
and Schiefer by which the latter undertook to construct
for the plaintiffs a· building and a sidewalk in the city
of Spokane; the said contract being referred to as Ex-
hibits "A" and "C", attached to the statement ·of facts;
that a bond was executed by the contractors for the faith-
ful performance of the contract, and that the American
Surety Company executed the bond as surety thereon,
referring to the bond as Exhibit B, attached to the state-
ment of facts; that a verdict was returned and judgment
entered against the defendants, the contractors and the
surety on the bond, from which judgment the surety com-
pany alone appeals; that the respondents pleaded in their
complaint (par. 7, Transcript, p. 3), that they had, by
an agreement with the contractors made subsequent to
the original contract, reduced the contract price to the
extent of $375, and arranged for the sidewalk to be built
by other parties than the contractors, with the consent
of the American Surety Company; that, no proof of such

consent having been offered, the appellant company, when the respondents rested, challenged the sufficiency of the evidence, and moved the court to take the case from the jury, and for judgment; that the motion was overruled; that, there being no evidence of such consent in the case when the evidence was all in, appellant requested the court to instruct the jury to return its verdict for appellant, which the court refused to do; and that "there are several other questions stated and discussed in the brief." Considering this general statement in connection with the further statements of other questions "stated and discussed" elsewhere in the brief, we are satisfied that the appellant has substantially complied with the rule invoked by the respondents.    Nor do we think that the respondents have in any wise been prejudiced by reason of the omission of any material fact on the part of appellant in the statement of its case.    Indeed, it clearly appears to us from an examination of their brief, that the respondents thoroughly understood the case as presented in the brief of the appellant.    It is true, we have been compelled, in some instances, to disregard briefs, and affirm judgments appealed from, for flagrant violations of the rules of this court, and especially for a failure to point out the errors relied on for a reversal of the cause; but such is not the case in hand.    We are of the opinion that the appellant is entitled to have its case, as presented, considered upon its merits, and the motion to strike the brief and dismiss the appeal is therefore denied.

The learned counsel for the appellant earnestly insist that the court below erred (1) in overruling their motion, made at the close of respondents' evidence, to take the case from the jury, and for judgment, on the ground of insufficiency of the evidence, and (2) in refusing to instruct the jury, as requested by appellant at the close of

the evidence, to return their verdict in favor of the appellant. The argument of appellant is mainly addressed to these two assignments of error, and we will consider them together, as they are both based upon the idea that there was no proof at the trial in the court below that the appellant ever consented to the change in the contract guarantied by appellant, whereby the contractors were released from the obligation to construct the sidewalk, as pleaded by the respondents in paragraph 7 of their complaint, and above set forth in our statement of the facts.

Numerous authorities are cited in the brief of the appellant in support of the proposition that changes in a contract, the faithful performance of which the surety has guarantied, if made without the consent of the surety discharges him, even though the changes may be beneficial to the surety; that the liability of the surety does not extend beyond the very terms of his contract, and that no equitable considerations can be permitted to operate against a surety. That the doctrine announced and contended for by appellant as to the rights and liabilities of a surety is uniformly maintained by the courts, and is well founded in reason, is frankly conceded by the learned counsel for the respondents; but they insist that it has no application to this case for the alleged reason that it is abundantly shown by the record that the appellant did in fact consent to the alteration of the contract of which it now complains. It is not claimed, however, by counsel that such consent was shown by the testimony of any witness who testified at the trial of the case. Their contention is that the change in the contract was provided for in the contract itself, as well as in the bond, both of which were introduced in evidence by the respondents, and was, therefore, consented to by the appel-

lant when it executed the bond, and that no other or further proof of such consent was required. And, if it be true that the contract contemplated and provided for such an alteration as was made by the parties thereto, it follows that the appellant will not be discharged from the obligation of its bond on the ground that it did not consent to such alteration.

In *DeMattos v. Jordan,* 15 Wash. 378 (46 Pac. 402), this court held that sureties on the bond of a building contractor are not discharged by deviations from the specifications in the construction of the building, nor even by material alterations, when the contract itself permits such deviations or alterations to be made. *American Surety Company v. Lauber,* 22 Ind. App. 326 (53 N. E. 793), was an action on a bond for the faithful performance of a contract entered into between one Hutton and the board of education of South Bend, Indiana, for the construction of a certain school house. In that case, as in this, the contract and the bond in question were made a part of the complaint, and their execution admitted. The surety claimed that it was discharged by reason of a change in the contract. The provisions of the contract as to changes and alterations in the work were, in substance, the same as the provisions incorporated into the contract here under consideration; and in that case the court said:

"The third article of the contract between Hutton and the board provides that 'no alteration shall be made in the work shown or described in the drawings and specifications, except upon a written order of the architects.' Provision is also made for estimating the value of the work added or omitted, and for reference to arbitration in case the architect and contractor cannot agree as to the value of the changes. The contract thus contemplated that changes may be made as the work progresses, and provides therefor. The sureties, in the execution of the

bond, consented in advance to changes that might be made properly within the scope of the contract. The answer does not aver that the changes were not made in the manner provided by the building contract. If Hutton, for purposes of his own, made the changes, his sureties would not be thereby relieved. It is averred, as to one item of change, that the change so stated was carried out and performed by the said Hutton under the instruction of the architect of said building. It will be presumed, in the absence of an averment to the contrary, that the changes were made conformably to the provisions of the contract. The sureties consented in advance to changes that might be made conformably to the terms of the contract."

The decision in the above cited case fully supports the respondents' contention, and is directly in line with the ruling of this court in *DeMattos v. Jordan, supra*. And the question, then, is, was the change in the work, of which the appellant complains, contemplated and provided for by the agreement between the contractor and the respondents? We think that a proper construction of the contract warrants the conclusion that it was. It must be borne in mind that it is admitted in the pleadings that the appellant consented to the substitution of cement for asphalt in the construction of the sidewalk. And it is argued by appellant's counsel that this substitution of one material for another constituted the only real change made "in the work," so far as the sidewalk was concerned, and that the agreement permitting the respondents themselves to construct it simply effected a change "in the workers," and not in the work, and that no such change was ever consented to by appellant, or authorized by the contract between its principal and the respondents. It is admitted that the sidewalk was actually built in conformity with the specifications of the architect, except as

to the material used in its construction; and counsel are therefore fully justified in asserting that that change constituted the only alteration that was made in the work, with respect to the sidewalk. But we are not convinced that the contractors were not at liberty, under this contract with the respondents, to allow the latter to construct the sidewalk for a specified consideration, and to deduct the value thereof from the original contract price of the whole work. On the contrary, we are clearly of the opinion that they had the right to employ the respondents, or any other person or persons, to perform that part of the work. An examination of the building contract discloses that it was understood by the parties making it that at least a portion of the work might be performed by subcontractors. This is evident from the fact that the contract expressly provides for the discharge of liens claimed by sub-contractors. Had the contractors employed a stranger to build the sidewalk for $375, we think it would hardly be contended that such employment was not within the scope of the original contract. We also think that the arrangement with the respondents for the building of the sidewalk had no more effect upon the liability of the appellant than the employment of any other persons would have had. As to the work performed by them, the respondents were, to all intents and purposes, merely sub-contractors. Assuming that we are correct in our conclusion that the respondents constructed the sidewalk for, and as the employees of the contractors, it follows that the objection that it was neither alleged nor proved that such work was done "upon the written order of the architect," as specified in the contract, cannot be sustained, as that provision relates solely to changes in the work shown on the drawings and specifications, and not to the employment of the men engaged in performing the work.

As to respondents' claim for $900 on account of the admitted delay in the completion of the buildings, the court instructed the jury as follows:

"I instruct you, gentlemen of the jury, that, under the admitted facts in the pleadings in this case, you must find a verdict for the plaintiffs for the delay in completing this building, for the period of ninety days, of $900, unless you find the defense or excuse for that, which is set up by defendant in his answer, is sustained by the testimony. The defendants allege with reference to that matter several defenses. The only defense, however, which the court submits to you, and which, as a matter of law, you are entitled to consider under the facts and testimony in this case, is the following: That the plaintiffs orally agreed with the defendants, Rief and Schiefer, after the making of the said building contract, and so modified said building contract that these defendants, Rief and Schiefer might and should have until the first day of March, 1900, within which to fully perform said building contract and complete said building, and consented to such extension of time and said building was completed within such extended time. As to that defense, I charge you that if you find from the testimony in this case that there was an oral agreement between Mr. Drumheller and either Mr. Rief or Mr. Schiefer, by which they should have an extension of time until March 1st in which to complete this building, your verdict as to that item of $900 must be for the defendants."

The appellant claims that the court erred in thus instructing the jury, for the reason that the respondents were not entitled, under the contract, to recover any damages for delay in completing the building, without alleging and proving that such damages had been fixed and determined by the architect, or by arbitration, in accordance with articles three and eight of the contract, and that the court should have so instructed the jury. But we are of the opinion that the provisions of the contract invoked

by the appellant have no relation to the matter of liquidated damages, and that this instruction, as given to the jury, is not obnoxious to the objection urged against it. *Chandler v. Borough of Cambridge Springs,* 200 Pa. St. 230 (49 Atl. 772). The contractors and the respondents had a perfect right to provide by contract for the payment of a fixed sum of money for the failure to complete the building within a certain time, and, having so provided, it would be unreasonable to suppose that they intended to submit that question either to the architect or to arbitrators, for determination. Stipulations for liquidated damages are generally inserted in contracts like that in suit for the sole purpose of avoiding the possible or probable difficulty of proving the exact damages that may result from a breach of the contract; and, where such agreements are deliberately and intentionally entered into, they are binding upon the parties, and will be upheld by the courts. See *Reichenbach v. Sage,* 13 Wash. 364 (43 Pac. 354, 52 Am. St. Rep. 51); *Jennings v. McCormick,* 25 Wash. 427 (65 Pac. 764); *Young v. Gaut,* 69 Ark. 114 (61 S. W. 374). It sometimes happens that provisions apparently for liquidated damages are really nothing but stipulations for penalties or forfeitures, against which the courts, in proper cases, will grant relief. The rule applicable to these two classes of contracts is tersely stated by the court in *Young v. Gaut, supra,* as follows:

"While courts of equity afford relief against penalties, they cannot relieve against liquidated damages."

As we have already said, the defendants, in their answer, set up a claim amounting to $231.50, for extra work upon or about the foundation of the building. There was no averment in the pleadings of the respondents as to the value of this extra work, but at the trial the architect was called as a witness, and testified that the value of the

work did not exceed $120; and, in submitting this controverted claim to the jury, the court said:

"They [meaning defendants] claim that it is two hundred and thirty-one dollars and a half. The plaintiffs here as to that item claim that it was not worth so much. Their claim with respect to it, as shown by the testimony in the case, is that it was not worth more than $120."

The appellant insists that the court, in making this statement to the jury, violated that provision of the constitution which prohibits judges from charging juries with respect to matters of fact, or commenting thereon. But we do not think that these remarks of the judge fall within the spirit of the constitutional inhibition. It was the province of the judge to tell the jury what the *claims* of the respective parties were as to the particular matter in question; and, although in so doing he incidentally referred to the testimony, his statement, in our judgment, did not amount to a comment upon the evidence, within the meaning of the constitution. It certainly did not indicate to the jury that the evidence established, or tended to establish, the claim of either party. The court did not state, as the judge did in effect, in *State v. Hyde,* 20 Wash. 234 (55 Pac. 49), cited by appellant, what testimony had been given in the case. The statement made by the judge in the *Hyde Case,* which was disapproved by this court, was as follows: "My notes show that Concannon testified that appellant on the way to the station admitted to him (Concannon) that he struck the prosecuting witness the blow." The distinction between that case and this is apparent. In the recent case of *French v. Seattle Traction Co.,* 26 Wash. 264 (66 Pac. 404), we held that, when references to the evidence, made by the court in its charge to the jury, do not amount to an explanation or criticism of the evidence, nor assume or assert

that a particular fact is proven thereby, such references are not violative of the provision of the constitution which prohibits judges from commenting upon matters of fact. Under the rule there announced, the instruction here complained of was not improper.

It seems that there was some controversy between the respondents and the contractors as to the value of an extra door which had been placed in the building, and for which, it was admitted, the contractors should be paid. The court, in charging the jury, omitted to mention the item of the door until its attention was called to it by counsel for the respondents. At that time one of the jurors asked the court what kind of a door it was that was furnished, and the judge replied: "I think the testimony is silent as to that point, as to the kind of door it was. You will simply have to determine that matter from the testimony in the case. I do not think there is any testimony about it." It is also claimed by appellant that this reply of the court to the interrogatory of the juror constituted a further comment upon the evidence, but we are not of that opinion. It is always proper for the court to state to the jury that there is no evidence as to a certain matter, when, as in this case, such is the fact. But it is for the jury alone to determine the weight of the evidence submitted to them, without interference or suggestion on the part of the court.

Some other objections are made to the court's instructions to the jury, but, inasmuch as they are not discussed in appellant's brief, we shall content ourselves by simply saying that we do not deem them well taken.

We find no error in the record and the judgment must, therefore, be affirmed, and it is so ordered.

REAVIS, C. J., and DUNBAR, FULLERTON and MOUNT, JJ., concur.