[No. 13972. Department Two. January 2, 1918.]

FRED W. STOCKING *et al.*, *Respondents*, v. ROBERT M. FOUTS
*et al.*, *Appellants.*[1]

PRINCIPAL AND SURETY—CONTRACTOR'S BOND—RELEASE BY CHANGES
IN PLANS. A surety on a contractor's bond is not released by changes
ordered, where the bond allowed changes in the specifications which
did not increase the cost more than twenty per cent, and the archi-
tect found, as authorized by the contract, that the changes were less
than twenty per cent of the contract price; there being no such
changes as to make it a new contract.

CONTRACTS—PERFORMANCE OF CONDITIONS—EXTRAS—COMPENSATION.
Where a contractor made changes in a building and proceeded with
the work without appealing from the decision of the architect deter-
mining the cost, as provided in the contract in case the parties failed
to agree as to the cost of changes, the owner may recover dam-
ages of the contractor and his surety by reason of failure to com-
plete the building, although he failed to arbitrate the matter of
extra cost, as that was determined by the architect.

Appeal from a judgment of the superior court for Thurs-
ton county, D. F. Wright, J., entered May 15, 1916, upon
findings in favor of the plaintiffs, in an action on contract,
tried to the court. Affirmed.

*Reeves Aylmore, Jr.*, and *Chas. M. Fouts*, for appellants.
*Troy & Sturdevant* and *A. J. Falknor*, for respondents.

PARKER, J.—The plaintiffs seek recovery upon a bond ex-
ecuted by the defendant Fouts, as principal, and the defend-
ant Guardian Casualty & Guaranty Company, as surety, to
secure the faithful performance of a building contract en-
tered into between the plaintiffs and the defendant Fouts.
Trial in the superior court for Thurston county sitting with-
out a jury, resulted in findings and judgment in favor of the
plaintiffs and against the defendants for the sum of $5,917.40,
rendered upon the theory that the plaintiffs had been com-
pelled to pay large sums in excess of the contract price in

[1]Reported in 169 Pac. 593.

order to protect their property from lien claims for material and labor incurred by the defendant Fouts in performing the contract, and that the plaintiffs had thereby been damaged in that sum. From this disposition of the cause, the defendants have appealed to this court.

In September, 1914, respondents and appellant Fouts entered into a contract by which Fouts agreed to furnish the material and construct for respondents a two-story reinforced concrete building in Olympia, in accordance with plans and specifications prepared by W. B. White, an architect, the work to be done under his direction and to his satisfaction as supervising architect. Fouts was to complete the building for an agreed lump sum of $16,000, except that he was to receive additional compensation for any changes in the plans and specifications which would increase the cost of the building to him. He agreed to execute a bond in the sum of $8,000 with a responsible surety company as surety to guarantee the faithful performance of the contract. The contract and specifications, made part thereof, contained, among other stipulations, the following:

"The party of the second part (Fouts) further agrees to assume and pay all bills incurred by him for labor and material in the execution of this work.

"Should the owners desire to make changes or alterations in the building during the construction, they shall have the right to do so, but such changes must be ordered in writing by the architect and the price agreed upon at the time they are ordered, which agreed price is also to be placed in writing, and no extras will be allowed nor paid for unless in pursuance of written orders. Should it be found, when the extra work is ordered, that the owners and contractor cannot agree upon a just price for the same, then the matter shall be submitted to the architect, who shall give a written statement as to a just consideration, either party having the right to appeal from this decision. . . .

"Should the owner or contractor desire, either may appeal from any and all decisions of the architect herein named to a board of arbitration, consisting of one person chosen by each

principal and an umpire selected by the two so chosen, and the decision of such a board shall be final and binding on all parties concerned."

The contract having been signed by the parties, immediately thereafter, in compliance with its terms, a bond in the sum of $8,000 was executed by Fouts, as principal, and appellant guaranty company, as surety, guaranteeing the faithful performance of the contract. This bond is the one here sued upon and contains, among other stipulations, the following:

". . . no change shall be made in the plans and specifications, terms, covenants and conditions of such contract which shall increase the amount to be paid the principal more than twenty per centum of the penalty of this instrument. . . ."

The plans and specifications originally contemplated the construction of a storeroom and a banking room on the lower floor, and included a vault in the banking room. They also contemplated putting in fireproof partitions, known as Jester partitions, between the rooms on both floors. While the construction of the foundation and the outer walls of the building was progressing, but before any work was done on the interior portions thereof, respondents decided to have the banking room partitioned into two storerooms, omit the vault, and have the partitions between the rooms on both floors constructed of wood studding and lath with ordinary plastering thereon, instead of the Jester partitions as called for in the original plans and specifications. Some other minor changes were also decided upon by respondents, but we think they are not of sufficient importance to require notice here. Revised plans and specifications were prepared accordingly by the architect and delivered to Fouts, who was directed to proceed with the construction of the interior of the building in accordance therewith. Fouts and respondents were unable to agree upon the additional compensation he should receive for the making of these changes, so White, as

the supervising architect, made an estimate of what he considered a just extra compensation therefor, made out a written statement thereof and delivered the same to Fouts as his, the architect's decision upon the question. This statement shows that, after making deductions for the omission of the vault, the fireproof Jester partitions, and some other smaller items, and making allowance for the extra work and material to conform to the revised interior plans and specifications, Fouts would be entitled to $667.25 in addition to the contract price of $16,000, upon the completion of the building in accordance with the revised plans and specifications. The trial court found:

"That thereafter the defendant Robert M. Fouts, doing business as the Fouts Construction Company, placed said extras in said building; that the said defendant Fouts never appealed from said architect's statement. That a long time after said building was completed and accepted, the defendant Robert M. Fouts, doing business as the Fouts Construction Company, proposed some sort of arbitration of the matters relating to said extras, but such proposal was not seasonably made nor within a reasonable time after the furnishing of the written statement as to the just consideration by the architect and not in accordance with the provisions of the contract."

We think this finding is fully justified by the evidence. There is no dispute as to the sums which respondents were compelled to pay in order to protect their property from liens of materialmen and laborers which were incurred by Fouts in the performance of the contract in excess of the contract price, including extra compensation allowed by the architect because of the changes; nor could it be seriously contended that respondents were not damaged in the amount for which judgment was rendered in their favor against appellants because of the failure of Fouts to faithfully perform his contract to assume and pay all bills incurred by him for labor and material.

It is first contended in appellant guaranty company's behalf that the revised interior plans and specifications worked such a change in the original contract as to make it in fact a different contract from that which the bond was given to secure the faithful performance of, and that, therefore, no recovery can be had against the guaranty company upon the bond. If the contract and bond were silent upon the matter of making changes in the plans and specifications, it is possible that the changes made might be considered of such a nature that the surety would be released upon the theory that the contract under which the building was completed was not the contract originally made and for the faithful performance of which the bond was given. We have seen, however, that the contract expressly authorizes changes at the instance of respondents, and that the changes made were ordered in compliance with the terms of the contract. We have also seen that, while the contract authorizes changes without specifying the extent to which respondents might go in making changes, the bond expressly recognizes that such changes may be made, providing they did not increase the amount of the extra compensation to be paid to Fouts more than twenty per cent of the penalty of the bond. The bond was signed, not only by the guaranty company, but also by Fouts, and is therefore a recognition, both by him and the guaranty company, of the extent to which changes might be made in the plans and specifications, and we think has all the force as if the twenty per cent limit had been inserted in the contract itself.

Assuming for the present that Fouts was entitled to no more than the $667.25 allowed him by the architect as his compensation because of the changes, it becomes plain that the increased cost of the building, by reason of the changes, falls far short of twenty per cent of the $8,000 named as the penal sum of the bond. It seems quite clear to us that not only were the changes well within the twenty per cent limit agreed upon, but that they were not such changes as resulted

in the construction of a building materially differing from that which the original contract contemplated might be constructed thereunder. It may be that, under a contract of this nature, allowing changes to the extent this contract does, a completed building might be so different from the one contracted for, though costing no more than the agreed contract price, that the surety upon the bond to secure the faithful performance of the contract would be released because of such a change, but we think this is not such a case. There was no change in the outward appearance or design of the building, its size, main walls, foundations or floors; the changes being only the omission of the vault, the omission of the fireproof Jester inner partitions and the substitution of wooden lath and plaster partitions therefor, and some other minor changes. It is, we think, clearly such a building as the original contract contemplated might be constructed thereunder. Our decisions in *De Mattos v. Jordan*, 15 Wash. 378, 46 Pac. 402, *Drumheller v. American Surety Co.*, 30 Wash. 530, 71 Pac. 25, and *Ovington v. Aetna Indemnity Co.*, 36 Wash. 473, 78 Pac. 1021, deal with contracts similar to the one here involved and are in harmony with our conclusions here reached. The decisions relied upon by counsel for appellants have to do with contracts which are silent upon the question of changes. We are of the opinion that appellant guaranty company cannot escape liability upon the theory that it did not guarantee the faithful performance of the contract under which the building was finally constructed.

It is contended in behalf of both appellants that respondents have no right to maintain this action because they have not sought to have submitted to arbitration the question of the matter of extra compensation Fouts is entitled to for the work and materials furnished by him as a result of the changes in the interior plans and specifications. The argument seems to be that, because of the failure of Fouts and

respondents to agree upon the amount he was to receive for the extra work and material, that question is still an open one and must be either settled by arbitration or at least an offer to settle by arbitration made by respondents before they can resort to the courts for the settlement thereof. It seems to us that the answer to this contention is found in the fact that, upon the failure of Fouts and respondents to agree upon the amount of such extra compensation when the extra work was ordered, the amount of such extra compensation was determined by the architect as provided in the contract; that Fouts, being duly notified thereof, proceeded with the work and completed the building in accordance with the revised interior plans and specifications, and that he did not appeal from the decision of the architect fixing his extra compensation, at least not until long after the completion and acceptance of the building. It seems to us that the terms of the contract above quoted contemplated that the amount of the extra compensation due Fouts resulting from changes in the plans and specifications should be determined either by agreement, decision of the architect, or arbitration "when the extra work is ordered," or, in any event, before it is undertaken and completed, and that Fouts, having been notified of the decision of the architect and not appealing therefrom but proceeding with the work as directed, the architect's decision became final and binding upon him. It seems to us the architect was as much an arbiter in the first instance and his decision as final and conclusive as that of the arbiters to whom appeal might be taken from his decision, should no appeal be taken. Should we proceed upon the theory that Fouts had a reasonable time after the rendition of the decision of the architect to appeal therefrom even though he proceeded with the work, we think he did not appeal within a reasonable time, as concluded by the trial court. Our decision in *Bavaria Inv. Co. v. Washington Brick, Lime & Sewer Pipe Co.*, 82 Wash. 187, 144 Pac. 68, supports this view.

Further contentions made in appellant's behalf we think are without merit and do not call for further discussion.

The judgment is affirmed.

ELLIS, C. J., HOLCOMB, FULLERTON, and MOUNT, JJ., concur.